UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


REGINA M. SCOTT,

        Plaintiff,

                                            CASE NO. 1:07-CV-505

v.

                                            HON. ROBERT J. JONKER

COMMISSIONER OF SOCIAL
SECURITY,

        Defendant.

_____/

**OPINION**

Ms. Scott brings claims of disability-based employment discrimination, including failure to

accommodate, against the Social Security Administration ("SSA").  This matter is before the Court

on the parties' cross-motions for summary judgment (docket ## 48 and 51).  Neither party requested

oral argument on the motions.  Because oral argument did not appear necessary to the Court or

desirable to the parties, the Court did not hold a hearing on the motions (*see* docket # 62).  The Court

bases its Opinion on a careful review of the entire record.

**Facts**

1.      **The SSA Hires Ms. Scott as a Probationary Employee**

Ms. Scott began employment with the SSA on September 27, 2004 as a Case Technician

Trainee.  (Def.'s Brief in Support of Mot. for Summ. J., docket # 49, Ex. D at 1.)  Her employment

was subject to a one year probationary period.  (*Id.*) Ms. Scott's duties centered on case development

and management.  (*Id.*; Scott Dep. at 125.)[1]  Her responsibilities included, among other things,

reviewing and analyzing medical documentation, records and evidence; composing correspondence

to request medical records and preparing responses to written inquiries on cases; organizing and

managing case records and exhibits; preparing letters, memoranda, forms, reports and other

materials, with responsibility for correct spelling, punctuation, grammar and arrangement of final

copy; preparing certain cases and decisions for mailing to appropriate parties; and mailing fee

agreements after ensuring administrative law judge ("ALJ") approval and signature. (*Id.*; Scott Dep.

at 125.)  Ms. Scott's duties called for a high level of accuracy.

**2.      Job Performance Issues Arise**

Ms. Scott began to encounter performance difficulties in her work within forty-five days on

the job, by late October or early November of 2004.  (Scott Dep. at 134-35.)  For example, she made

typographical errors in correspondence, misnumbered exhibits and filed exhibits out of order.  (*Id.*

at 135-37.)  Late in 2004, one of Ms. Scott's supervisors, Penelope Moore, met with her to discuss

concerns about the quality of her work.  (*Id.* at 135-36.)  Errors continued, and Ms. Scott's

supervisors met with her again in January 2005.  (Def.'s Brief in Support of Mot. for Summ. J.,

docket # 49, Ex. D at 2.)  During this meeting, her supervisors emphasized the need for accuracy in

her work, particularly in preparing files and correspondence.  (*Id.*)  They provided Ms. Scott with

examples of inaccurate exhibit lists and correspondence, and they discussed further training.  (*Id.*)

In February 2005, Ms. Scott received particular training regarding workload management, because

---

[1] Ms. Scott's deposition is Exhibit A to Defendant Commissioner of Social Security's Brief
in Support of Motion for Summary Judgment, docket # 49.

Ms. Scott had not been taking timely action on some of the cases for which she was responsible. (*Id.*; Scott Dep. at 155.)

Ms. Scott's job performance remained unsatisfactory. She continued to make mistakes in filing exhibits, managing files, and preparing and mailing complete notices. (*Id.*) She continued to make errors in correspondence sent out under the stamped signature of Judge Goheen, the ALJ to whom she was assigned. (Scott Dep. at 156.) In March of 2005, Ms. Moore asked Ms. Scott to return the signature stamp to her. (*Id.*) Ms. Moore also instructed Ms. Scott to submit all of the correspondence she prepared to Ms. Moore for review before sending it out. (*Id.*) Despite this instruction, Ms. Scott continued to send out some of the correspondence she prepared without providing it to Ms. Moore first. (*Id.* at 156-61.)

**3.     Ms. Scott Is Diagnosed with Mild to Moderate ADHD and Responds Positively to Treatment**

In the spring of 2005, Ms. Scott's therapist tentatively diagnosed her with attention deficit hyperactivity disorder ("ADHD") and referred her to a psychologist to confirm the diagnosis and prescribe medication as needed. (Scott Dep. at 148-50.) The psychologist diagnosed her with mild ADHD and prescribed medication. (*Id.* at 149-50; Def.'s Brief in Support of Mot. for Summ. J., docket # 49, Ex. G. at 3.) Ms. Scott promptly notified Ms. Moore of the diagnosis. (Scott Dep. at 148.)

Ms. Scott self-reports improved feelings after she began taking medication. She notes that "I started taking my medication in April of 2005. By May of 2005, I felt an overall improvement in my ability to concentrate and am within normal range of concentrating and . . . could do the

requirements of the job [at the SSA] at that time." (Scott Aff. at 3.)[2]  Ms. Scott explains her view

that "with medication I am fine.  I can focus and prioritize." (*Id.* at 2.)

**4.      Performance Issues Persist, Resulting in the Termination of Ms. Scott's Employment**

Ms. Scott may well have felt better, but her work quality did not improve.  Her supervisors

continued to find her work unsatisfactory.  On August 5, 2005, Ms. Moore provided Ms. Scott with

a Performance Improvement Memorandum ("PIM") (Def.'s Brief in Support of Mot. for Summ. J.,

docket # 49, Ex. D.)  The PIM details both ongoing errors in Ms. Scott's work and her supervisors'

efforts to help her improve. (*Id.*)  The PIM links its criticisms to essential elements of Ms. Scott's

job and allows her one month to begin performing satisfactorily. (*Id.* at 7-9.)

Ms. Scott found the PIM accurate in some respects and mistaken in others.  (Scott Dep. at

153-54.)  She submitted a written response to the PIM outlining the aspects with which she

disagreed.  (Def.'s Brief in Support of Mot. for Summ. J., docket # 49, Ex. E.)  In that response, she

concedes that she continues to make typing and grammatical errors.  (*Id.* at 5.)   She also

acknowledges, albeit indirectly, that she has not complied with Ms. Moore's instruction to submit

all of her work for review before sending it out. (*Id.*)

On September 12, 2005, the SSA terminated Ms. Scott's probationary employment and

provided Ms. Scott with a written notice of termination.  (Def.'s Brief in Support of Mot. for

Summ. J., docket # 49, Ex. F.)  The notice describes the reasons for termination as "unacceptable

performance of the critical elements of [the] trainee position and [the] failure to demonstrate

acceptable progress toward acquiring the knowledge and skills required for later successful

---

[2] Ms. Scott's affidavit is Exhibit K to Def.'s Brief in Support of Mot. for Summ. J., docket # 49.

performance." (*Id.* at 1.)   The notice points out that despite training and close supervision, Ms. Scott's work continued to reflect errors in numbering and filing exhibits; omitting to mail out files after closing them; and typographical and grammatical errors in correspondence. (*Id.*)   The notice also comments that Ms. Scott undertook additional work outside her assigned duties despite specific instructions from a supervisor not to do so. (*Id.* at 2.)   Ms. Scott does not contradict these findings.

After unsuccessfully pursuing administrative remedies, Ms. Scott filed this lawsuit, initially alleging employment discrimination based not only on disability but also on race and sex. (Compl., docket # 1.)   The parties later stipulated to dismissal with prejudice of her discrimination claims based on race and sex, leaving only her claim for alleged disability discrimination. (*See* docket ## 46, 52.)

**Legal Standard**

Summary judgment should be granted if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Parks v. LaFace Records*, 329 F.3d 437, 444 (6th Cir. 2003) (citing FED. R. CIV. P. 56(c)).   A genuine issue of material fact exists if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).   In deciding a motion for summary judgment, the Court views the evidence and draws all reasonable inferences in favor of the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).   But that does not mean that any amount of evidence, no matter how small, will save a nonmoving party from losing on a motion for summary judgment. *Scott v. Harris*, 127 S. Ct. 1769, 1776 (2007).   When the nonmoving party's version of the facts is "blatantly contradicted by the record, so that no reasonable

jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a

motion for summary judgment." *Id.*

The Rehabilitation Act of 1973 (the "Rehabilitation Act") governs Ms. Scott's disability-

based claims. *See Jones v. Potter*, 488 F.3d 397, 403 (6th Cir. 2007) ("The Rehabilitation Act, not

the Americans with Disabilities Act (ADA), constitutes the exclusive remedy for a federal employee

alleging disability-based discrimination.") (citing 42 U.S.C. § 12111(5)(B)(i) and *Peltier v. United*

*States*, 388 F.3d 984, 989 (6th Cir. 2004)).  The Rehabilitation Act provides explicitly that "[n]o

otherwise qualified individual with a disability in the United States . . . shall, solely by reason of her

or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to

discrimination under any program or activity . . . conducted by any Executive agency."  29 U.S.C.

§ 794(a).  A plaintiff may recover on a claim under the Rehabilitation Act only if she shows that (1)

she is disabled; (2) she is otherwise qualified to perform the job requirements, with or without

reasonable accommodation; and (3) she was discharged solely because of her disability. *Jones,* 488

F.3d at 403 (citing *Monette v. Elect. Data Sys. Corp.*, 90 F.3d 1173, 1178 (6th Cir. 1996), and *Macy*

*v. Hopkins County Sch. Bd. of Educ.*, 484 F.3d 357, 363 n. 2 (6th Cir. 2007)).

**Analysis**

**1.      Claim of Disparate Treatment**

The *McDonnell-Douglas* burden-shifting framework applies to this case because Ms. Scott

has produced no direct evidence of disability discrimination.  *Id.* at 403-04.  Under the *McDonnell*

*Douglas* framework, the plaintiff bears an initial burden to establish a prima facie case of

discrimination.  *Id.* at 404 (citing *Monette*, 90 F.3d at 1186).  To make a prima facie case, a plaintiff

must show that (1) she is disabled; (2) she is otherwise qualified to perform the job, with or without

a reasonable accommodation; (3) she experienced an adverse employment action; (4) her employer

knew or should have known of her disability; and (5) after the adverse employment action, a non-

disabled person replaced her or the position remained open. *Id.* (*citing Timm v. Wright State Univ.*,

375 F.3d 418, 423 (6th Cir. 2004), and *Monette*, 90 F.3d at 1185). To satisfy the fifth element, the

plaintiff may instead show that similarly-situated but non-disabled employees received more

favorable treatment. *Id.* (citing *Talley v. Bravo Pitino Rest., Ltd.*, 61 F.3d 1241, 1246 (6th Cir.

1995)). If the plaintiff establishes a prima facie case, the burden shifts to the employer, which must

present a legitimate, non-discriminatory reason for the alleged adverse action. *Id.* (citing *Texas Dept.*

*of Community Affairs v. Burdine*, 450 U.S. 248, 253 (1981)). If the employer meets this burden, then

the burden shifts back to the plaintiff to prove by a preponderance of the evidence that the reason to

which the employer attributes the adverse employment action is a pretext for illegal discrimination.

*Id.*

Ms. Scott has not established a prima facie case. Under the law applicable at the time of her

termination, she was not disabled.[3] At the time the SSA terminated Ms. Scott's employment, to be

"disabled" under the Rehabilitation Act, an individual had to have "(1) a physical or mental

impairment which 'substantially limits' him or her in at least one 'major life activity,' (2) a record

of such an impairment, or (3) be regarded as having such an impairment." *See Mahon v. Crowell*,

295 F.3d 585, 589 (6th Cir. 2002) (citing 29 U.S.C. § 705(20)(B)). "Substantially limits" and "major

life activity" were narrowly construed. *Id.* at 590. An impairment that "only moderately or

intermittently prevents an individual from performing major life activities" was not a "substantial

---

[3] Congress has recently amended the Rehabilitation Act to include a more expansive definition of "disabled," but the amendment did not become effective until January 1, 2009 and contains no provision for retroactive application.

limitation." *Id.* Further, in determining whether a person was disabled, courts were to consider individuals in their "corrected state," that is, their state with the benefit of medication, therapy or other treatment. *Gonzales v. Nat'l Bd. of Medical Examiners*, 225 F.3d 622 (6th Cir. 2000).

Ms. Scott describes her ADHD as "medium to mild." (Scott Dep. at 207.) Ms. Scott effectively concedes that with medication, the "corrected state" the Court must consider under the law governing at the time of her termination, she is not disabled: in her affidavit, she states that "[w]ith medication I am fine. I can focus and prioritize." (Scott Aff. at 2.) She has noted that soon after starting to take medication, and by May of 2005, she considered herself "within normal range of concentrating and . . . could do the requirements of the job." (*Id.* at 3; Scott Dep. at 206.) Ms. Scott has stated that with her medication, and evidently without special accommodation, she could perform as well as her peers in the SSA. (Scott Aff. at 6; Scott Dep. at 205-06.) Even assuming that concentrating or performing her particular job with the SSA constitute major life activities, the record does not support a conclusion that Ms. Scott's ADHD substantially limited her in a major life activity.

Further, even assuming Ms. Scott could establish a prima facie case, the SSA has shown legitimate and non-discriminatory reasons for her termination. Ms. Scott repeatedly chose not to follow the explicit instructions of her supervisors. (Scott Dep. at 158-62, 167; Def.'s Brief in Support of Mot. for Summ. J., docket # 49, Ex. F at 2.) She continued to send out work without first submitting it to her supervisors, and she undertook additional duties outside the scope of her position despite having been told not to do that. (Scott Dep. at 158-62, 195-96; Def.'s Brief in Support of Mot. for Summ. J., docket # 49, Ex. F at 2.) She has conceded that she had other performance problems tied to key elements of her job, including difficulties with grammatical and

typographical errors.  (Scott Dep. at 135, 137, 143-44, 154-56, 162-65; Def.'s Brief in Support of

Mot. for Summ. J., docket # 49, Ex. E.)  Poor job performance and disobeying direct orders of a

supervisor constitute legitimate, non-discriminatory reasons for termination.  *Wright v. Murray*

*Guard, Inc.*, 455 F.3d 702, 707 (6th Cir. 2006).

Ms. Scott has made no showing that the legitimate, non-discriminatory reasons to which the

SSA attributed her termination were pre-textual.  To demonstrate pretext, Ms. Scott must show by

a preponderance of the evidence either (1) there was no basis in fact for the proffered reasons; (2)

the proffered reasons did not actually motivate the termination; or (3) the proffered reasons were

insufficient to motivate discharge.  *Jones*, 488 F.3d, 406 (citing *Manzer v. Diamond Shamrock*

*Chem. Co.*, 29 F.3d 1078, 1084 (6th Cir. 1994)).  However, both the SSA and Ms. Scott have shown

that there was abundant basis in fact for the proffered reasons for her termination, and there is no

evidence to suggest that the proffered reasons did not actually motivate the termination or were

insufficient to motivate the termination.

Ms. Scott's claim of disparate treatment under the Rehabilitation Act cannot succeed.

**2.      Claim of Failure to Accommodate**

To prevail on a claim of disability discrimination based on a failure to accommodate under

the Rehabilitation Act, a plaintiff lacking direct evidence of discrimination must first establish a

prima facie case.  *Gaines v. Runyon*, 107 F.3d 1171, 1175 (6th Cir. 1997).  The plaintiff must show

that (1) she is disabled; (2) she is otherwise qualified for the position; (3) the agency was aware of

the disability; (4) an accommodation was necessary; and (5) the agency refused to provide the

necessary accommodation.  *Id.* (citing *Kocsis v. Multi-care Management, Inc.*, 97 F.3d 876, 882-83

(6th Cir. 1996)).  If the plaintiff establishes a prima facie case, the burden shifts to the employer,

which must show that the employee cannot be reasonably accommodated, because the accommodation would impose an undue hardship on its operations. *Id.* (citing *Kocsis*, 97 F.3d at 883.)

Ms. Scott fails to establish multiple elements of the prima facie case. First, as discussed earlier, Ms. Scott has not established that she was disabled under the law governing at the time of her termination, and therefore has not satisfied the first element of the prima facie case. Second, Ms. Scott cannot satisfy the fourth element of the primae facie case because by her own admission, she needed no accommodation once she began taking medication. These failures, even standing alone, are fatal to Ms. Scott's accommodation claim. (*See* at 3; Scott Dep. at 206.)

Moreover, even if Ms. Scott were able to establish the other elements of the prima facie case, her claim would still fail because she cannot demonstrate that she actually identified and requested a necessary and reasonable accommodation, which is "implicit in the plaintiff's duty to demonstrate that the employer failed to provide the necessary accommodation." *Willard v. Potter*, 264 Fed. App'x. 485, 487 (6th Cir. 2008). The accommodations Ms. Scott claims she should have received include, in essence, (1) a change in her job structure to eliminate pre-hearing work and assisting senior case technicians; (2) memorialization of her disability in her employment file; (3) additional time to perform her tasks; (4) reassignment to a different office or administrative law judge; and (5) a color coding system for her files (which the SSA actually had provided). (Scott Dep. at 180-84, 187; Ex. E. at 7; Scott Aff. at 2, 5.) None of these claims survive scrutiny on this record. The first accommodation would involve changing the fundamental duties of her job and does not amount to a reasonable accommodation. *See Bratten v. SSI Servs., Inc.,* 185 F.3d 625, 632 (6th Cir. 1999); *see also Jasany v. United States Postal Service*, 755 F.2d 1244, 1250 (6th Cir. 1985) (accommodation

that eliminates essential functions of a job is unreasonable.)   The second change is purely

administrative.   It is not an accommodation, because it would not affect Ms. Scott's ability to

perform her job.   Providing Ms. Scott with extra time is not a reasonable accommodation, because

it would impact an essential element of her duties, the expeditious processing of claims.  (*See* Def.'s

Brief in Support of Mot. for Summ. J., docket # 49, Ex. C at 7 - 15.)   In addition, Ms. Scott admits

that she spent a portion of her time doing work her supervisors had instructed her not to do, making

it patently unreasonable to expect her employer to give her additional time to perform the actual

duties of her position.  (*See* Scott Dep. at 195-96; Ex. F. at 2.)   Further, there is no cognizable

evidence in the record that Ms. Scott even requested extra time.[4]   Finally, even assuming Ms. Scott

actually requested a transfer,[5] Ms. Scott has failed to identify any open position to which she could

---

[4] Ms. Scott's deposition does not mention such a request, even though she was asked repeatedly to describe all of the accommodations she requested.  (*See* Scott Dep. at 179-89.)  In an affidavit predating the deposition by two years, Ms. Scott did suggest that she asked for more time, (Scott Aff. at 5.), but a party "cannot create a genuine issue of fact sufficient to survive summary judgment simply by contradicting his or her own previous sworn statement . . . without explaining the contradiction or attempting to resolve the disparity." *Cleveland v. Policy Management Systems Corporation et al.*, 526 U.S. 785, 806 (1999).  *See also Reid v. Sears, Roebuck & Co.,* 790 F.3d 453, 460 (6th Cir. 1986) (holding that district court "properly refused to deny summary judgment" on basis of affidavit in which a plaintiff contradicted earlier deposition testimony); *Davidson & Jones Development Co. v. Elmore Development Co., Inc.*, 921 F.2d 1343, 1352 (6th Cir. 1991) (citing *Gagne v. Northwestern Nat. Ins. Co.*, 881 F.2d 309, 315 (6th Cir. 1989) and (*Laborers' Pension Trust Fund v. Weinberger Homes*, 872 F.2d 702 (1988)).  Ms. Scott makes no effort to explain why her deposition in this case – testimony under oath and cross examination – should be rejected in favor of her earlier hearsay statement in an affidavit.

[5] The evidence that Ms. Scott actually requested a transfer is at best inconclusive.  At one point in her deposition, Ms. Scott concedes that she never made such a request, though at a later point she muses that she may have mentioned transfer in a grievance she filed with her union. (Scott Dep. at 188-89.)  The grievance is Exhibit G to Defendant Commissioner of Social Security's Brief in Support of Motion for Summary Judgment, docket # 49.  The grievance recounts a host of frustrations in detail but includes only one statement that could even arguably be construed as a request for a transfer: "I Am [sic] also requesting that my appointment be changed to acknowledge my disability that was found by the EAP office." (Ex. G at 3.)  This vague statement could be

have been reassigned.  When a plaintiff claims that she should have been accommodated by reassignment to another position, she must "identify a vacant, funded position for which she was qualified, with or without accommodation, that existed at the time of her request for reassignment." *Willard*, 264 Fed. App'x at 487-88 (citing *Peltier v. United States*, 388 F.3d 984, 989 (6th Cir. 2004)).

Accordingly, Ms. Scott's claim of disability discrimination based on failure to accommodate cannot succeed.

**3.     The Statutory Requirement of "Solely By Reason of Disability"**

Even if Ms. Scott were otherwise able to prove her prima facie case, her claim would still necessarily fail on this record because the Rehabilitation Act imposes liability only when the challenged employment action was motivated "solely by reason of [the employee's] disability." *See* 29 U.S.C. § 794(a).  The case law in this Circuit uniformly enforces the statutory requirement. *Jones*, 488 F.3d at 403 (citing *Monette v. Elect. Data Sys. Corp.*, 90 F.3d 1173, 1178 (6th Cir. 1996) and *Macy v. Hopkins County Sch. Bd. of Educ.*, 484 F.3d 357, 363 n.2 (6th Cir. 2007)).  Ms. Scott cannot possibly make this showing on this record.  By her own admission, she failed to comply with her supervisor's instructions, and she failed to correct all of her performance problems during the term of her probationary employment.  Moreover, again by her own admission, once she received medication for her condition, she needed no accommodation of any kind.  Ms. Scott cannot possibly show that any action the Defendant took respecting her employment was motivated "solely by reason

---

viewed as a transfer request or simply as a request for an update to Ms. Scott's employment file to reflect her alleged disability.  The ambiguity of the statement fails to create a genuine issue of material fact because, as discussed above, nowhere has Ms. Scott identified an open position to which she requested a  transfer.

of [her] disability." To the contrary, it appears from this record that the Defendant's decisions were motivated solely by reasons other than disability.

## Conclusion

The Court finds that there exists no genuine issue of material fact and that the SSA is entitled to judgment as a matter of law in this case. Accordingly, the Court will enter a separate order granting Defendant's Motion for Summary Judgment (docket # 48), denying Plaintiff's Motion for Summary Judgment (docket # 51), and directing entry of judgment in Defendant's favor, dismissing Plaintiff's claims with prejudice.

Dated:   June 3, 2009                             /s/ Robert J. Jonker
                                                  ROBERT J. JONKER
                                                  UNITED STATES DISTRICT JUDGE